IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 14, 2015

## TREMAINE ROBERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 0402632    Chris Craft, Judge**

_____

**No. W2014-00400-CCA-R3-PC  -  Filed September 2, 2015**

_____

Petitioner, Termaine Roberson, appeals the denial of his petition for post-conviction relief. Petitioner contends that he received ineffective assistance of counsel based on his trial counsel's failure to adequately prepare for trial, including failing to call two witnesses at trial and failing to obtain DNA testing of a ski mask worn by one of the perpetrators. Having reviewed the record before us and the briefs of the parties, we conclude that the evidence does not preponderate against the post-conviction court's findings. Accordingly, the judgment of the post-conviction court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right, Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

James E. Thomas, Memphis, Tennessee, (on appeal); and James DeRossitt, Memphis, Tennessee, (at trial), for the Appellant, Tremaine Roberson.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

*Factual and procedural background*

Petitioner, along with his co-defendants Deddrick Parker and Taurus Driver, were indicted for two counts of aggravated robbery, a Class B felony, and five counts of aggravated assault, a Class C Felony. *State v. Parker*, No. W2006-00876-CCA-R3-CD, 2007 WL 2198443, at *1 (Tenn. Crim. App., July 30, 2007), *no perm. app. filed*. Petitioner was convicted of both counts of aggravated robbery and all five counts of

aggravated assault. Petitioner received a total effective sentence of thirty-five years' incarceration for his convictions. On direct appeal, this court remanded Petitioner's case for a new sentencing hearing. The record is unclear, but Petitioner's case was apparently remanded a second time for resentencing, and a negotiated sentence of 19 years was ultimately imposed.

The facts underlying Petitioner's convictions are summarized in this court's opinion in *State v. Parker*, 2007 WL 2198443, at *1-5. On January 17, 2004, two men armed with guns and wearing masks, gloves, and dark clothing entered the Cash America Pawnshop in South Memphis and stole money and jewelry. Three employees of the pawnshop, as well as a customer and her two children, were present at the time. The men told everyone to "get down." The customer's son identified Petitioner in a photographic lineup as the person who broke the glass of a jewelry case with a hammer. The men fled the scene after an alarm sounded. The customer's purse was also taken in the robbery.

The men wrecked their vehicle approximately 100 yards from the pawnshop. Police discovered felt jewelry displays and loose pieces of jewelry taken from the pawnshop, as well as cash inside the vehicle. Police also recovered a pistol and a bag containing $520 on a nearby sidewalk. A witness followed a man who fled from the scene of the automobile accident to a nearby house where police subsequently found Petitioner and his co-defendants, Parker and Driver. The witness identified Driver as one of the men who fled the vehicle. Petitioner's shoes and his co-defendants' shoes all matched the shoes worn by the perpetrators as seen on the pawnshop's surveillance videotape.

One witness who observed Petitioner and his co-defendants fleeing the scene of the automobile accident followed the men in his vehicle. He testified at trial that Petitioner fired a shot at his vehicle. The bullet struck the hood, ricocheted off, and missed the windshield. The witness's wife and son were inside the vehicle. The witness retrieved his gun and exited his vehicle. Petitioner's co-defendant Parker dropped a bag containing cash and a pistol, and he fell to the ground. Petitioner and Driver ran away. The witness told Parker to stay on the ground, but Parker ran away.

In a police interview, Petitioner denied any involvement with the robbery. Petitioner asserted that he walked to the corner store and then to a friend's house on the day of the robbery. He then walked to his aunt's house where he, Driver, and Parker were arrested. An employee at the Corner Food Store testified for the defense. She testified that Parker came into the store at "lunchtime." She could not remember if anyone else was with Parker that day. Another witness for the defense testified that he picked up Driver and a cousin and drove them to the Southland Mall on the day of the robbery. On the way to their aunt's house, they passed the pawnshop and saw police.

2

Driver also testified that they were at the mall at the time of the robbery. Parker testified that he and Petitioner rode in a friend's car to the Corner Food Store. Parker and Petitioner then walked to a friend's house, and later they walked to his grandmother's house, where they were arrested. Parker denied any involvement in the robbery. Petitioner did not testify at trial.

### Post-conviction hearing

At the evidentiary hearing on June 6, 2013, Petitioner testified his mother retained trial counsel to represent Petitioner. Petitioner testified that trial counsel met with him "probably once or twice." He testified that he wrote letters to trial counsel "on several occasions" to request that trial counsel visit him to discuss his trial preparations, "but [trial counsel] never showed." He testified that he and trial counsel argued "about what [Petitioner] wanted [trial counsel] to do and [trial counsel] didn't do it."

Petitioner testified that he gave counsel the names of witnesses to testify in his behalf, including Officer Sherry Childs. Petitioner testified that Officer Childs could have testified that she saw Petitioner walking in the neighborhood at a time that was inconsistent with Petitioner having committed the offenses. Petitioner testified that he was unable to locate Officer Childs to testify at the post-conviction hearing. Petitioner also testified that someone he called "Mickey" could have testified that Petitioner "stopped by" his house at the time of the offense.

Petitioner testified that he asked trial counsel to request DNA testing on a ski mask that was used by one of the perpetrators in the robbery. Petitioner testified that counsel responded that DNA testing "was the State's job." Petitioner testified that he was "[p]ositive" that he would have been exonerated if DNA testing had been conducted. He testified that one of the State's witnesses at trial testified that one of the perpetrators lifted his ski mask up and smiled at him. Petitioner testified that trial counsel did not effectively cross-examine the witness on the perpetrator's appearance. On cross-examination, Petitioner acknowledged that trial counsel met with him at each one of Petitioner's court appearances.

Trial counsel testified that he had been practicing criminal defense for 14 years. He testified that he met with Petitioner "numerous times." He also testified that he had "an open dialogue" with Petitioner's mother, and he met with her monthly. He acknowledged that most of his visits with Petitioner were in court. Trial counsel testified that he presented two alibi witnesses at trial. Trial counsel did not recall Petitioner asking him to locate Officer Childs as a potential witness. Trial counsel testified that he did not believe he would have called the officer to testify because "there were numerous witnesses [who] saw [Petitioner] in the area."

3

Trial counsel testified that the decision not to request DNA testing on the ski mask was a collective strategy among Petitioner and his co-defendants because all three co-defendants were arrested at the same time at a location where an eyewitness saw them run. Trial counsel explained that if DNA testing matched one of the co-defendants, it would have implicated them all. Trial counsel also testified, "[t]here was no reason, based on the alibi witnesses that he said, to do that."

At the conclusion of the State's proof, Petitioner's post-conviction counsel requested a continuance in order to prepare any rebuttal proof. At the continuation of the hearing on August 16, 2013, Petitioner's mother, Thelma Roberson, testified that she retained trial counsel to represent Petitioner. She testified that she met with trial counsel "each time we came to Court and it was put off, or something, yes I would go to his office." She testified that she argued with trial counsel about the way he handled Petitioner's case. She testified that Petitioner was playing video games "at a young man's house" at the time of the robbery. She testified that she provided trial counsel with the names of alibi witnesses and a videotape showing her nephew, co-defendant Taurus Driver, in a store at the Southland Mall at the time of the robbery. She testified that she gave the videotape to the prosecutor as well, and she was told that the black male in the video could not be identified as Mr. Driver. Ms. Roberson testified that she also provided trial counsel with unsigned letters from witnesses who could provide alibis.

*Analysis*

Petitioner contends that he received ineffective assistance of counsel based on trial counsel's failure to adequately prepare for trial. Specifically, Petitioner asserts that counsel's performance was deficient and Petitioner was prejudiced by trial counsel's failure "to adequately meet with [him]" and "by failing to call witnesses." Petitioner also asserts that trial counsel's performance was deficient and Petitioner was prejudiced by counsel's failure to seek DNA testing of a ski mask worn by one of the perpetrators.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).

4

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger*, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

Following the evidentiary hearing, the trial court made the following written findings of fact and conclusions of law regarding Petitioner's claim that he was denied the effective assistance of counsel during trial:

> A) *Failure to confer with the petitioner as often as necessary to establish a defense*. The petitioner testified that his attorney only visited him twice in the jail prior to trial. On cross-examination, however, he admitted to numerous visits on court dates. His trial attorney testified that he was shocked to hear the petitioner testify that he had only visited him twice, as he had met the petitioner in the jail numerous times, and many more times along with his co-defendants and their attorneys as a group. They had been set for trial more than once and had fashioned an alibi defense for each of them as a group, and those witnesses all testified at trial. This court finds the attorney's testimony in this regard credible. The petitioner has not suggested anything left undone due to

5

lack of communication between himself and his attorney. This allegation has no merit.

B) and C) *Failure to prepare for trial and investigate the facts*. No specifics were included within these two allegations in the petition. The petitioner testified that his attorney should have called police officer Sherry Lynn Childs as a witness to testify that she saw the petitioner and one of his cousins walking through the neighborhood from the store at a time inconsistent with his committing the robbery. He stated that he told his attorney this and his attorney told him that there was "no need to even call her." He also stated he wanted his attorney to call a Mr. Glover. When asked his first name, he said "Danny Glover." Then he changed his mind *sua sponte* and stated that his name was not Danny Glover, but he only knew him as Mickey, and apparently did not know his last name. It appeared rather obvious to his court that he had made up this name on the spot, and when he realized he named the movie actor Danny Glover, he reversed himself. He testified that Mickey would have testified to "Us being there at his home." He then stated that "He was an actual witness who came down and testified, but he was never called." [Citation to the record omitted.] His attorney testified, to the contrary, that he was never given the names of these witnesses. He also added that even if they existed and had been called, their testimony would have contradicted all three defendants' alibi proof that they were all together somewhere else. They were all arrested together by the police when a witness followed them to the house on West Belle Haven Road, so none of them could claim they were not together. This court had reset the hearing on this petition numerous times to give the petitioner's post-conviction attorney time to find these witnesses before the hearing, but the post-conviction attorney eventually abandoned all attempts to find them. They were never found and called as witnesses, even though the petitioner had made parole by this time and was available to help. After the June hearing, this court gave the petitioner additional time to look for them, and the petitioner's mother testified August 16, 2013, seeking to introduce four documents, allegedly made by other additional alibi witnesses. However, these were inadmissible. They are included in the record as Exhibit A as an offer of proof, but will not be considered by this court. The first two, Jocleta Singleton and Dwanda Faulkner, were not called as witnesses, even though Ms. Singleton's address and cell phone number were listed on the document. The last two documents were allegedly made by Chimarco Faulkner and Donnell T. Powell, who were called as witnesses by the defense at the petitioner's jury trial. The

6

petitioner's proof as to this allegation is simply not credible.  To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing.  *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).  "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."  *Id.*

One other complaint testified to by the petitioner at the hearing was that his attorney never conducted DNA testing on a ski mask the police tagged as evidence.  He opined that if the test came back negative for all three defendants, he would be exonerated.  His trial attorney testified that he did not ask for a DNA test because[:]

When I discussed this with the other attorneys, it was clear that if they all three were going to maintain their innocence throughout the trial and that was going to be the commonality, if it tested positive and it came back to Dedrick Parker or Taurus Driver, then that would have been extremely prejudicial and there was no reason to risk that.  There was no reason, based on the alibi witnesses that he said, to do that.  And that would have just - - that could have hampered him much more than helped him.

[Citation to the record omitted.]  The attorney was asked on cross-examination the following question:

Q.  Was that strategy from you or from [the other defendants' attorneys]?"
A.  Well, I don't remember exactly as to who was the deciding factor, but the reality was we felt pretty strong with what we had.  And to go on a fishing expedition and start looking under a stone, which may or may not - - I don't know what the results would have shown.  I don't even know really whether that was even - - what the logistics of that would have been.
So I mean, again, we felt comfortable as a group with what we had.  We felt that this is how they want to proceed on alibi.  And had we run any risk of - - I don't know what would have come back on the ski mask.

[Citation to the record omitted.]  No ski mask or other test results were produced at the hearing, and no proof was introduced that there was ever

any DNA found on any mask in sufficient quantity to test or be able to yield test results. Even if there were DNA found on a mask which could be tested, and proved not to belong to any of the defendants, that still would not have exonerated the petitioner or his co-defendants. The decision not to attempt to test possible DNA was a strategic, tactical choice made by all three defendants' attorneys. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based on adequate preparation. *See Hellard*, 629 S.W.2d at 9; *DeCoster*, 487 F.2d at 1201. "However, if the record shows the action of trial counsel, in the circumstances shown, has no rational or logical basis, then the legitimacy of the tactics employed must be scrutinized under the requirement of *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)." *State v. Buford*, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983). This court finds that the decision to avoid the gamble of exploring the possibility of testing a ski mask for DNA evidence was a reasonable one under all of the circumstances of the case. A negative test would not exclude any of the defendants, and a positive match had the potential for disaster. This complaint does not award the petitioner any relief.

The trial court's findings are comprehensive, and the trial court explicitly accredited trial counsel's testimony. Nothing in the record preponderates against the trial court's findings that trial counsel was not deficient in his performance. Petitioner failed to present the testimony of the two witnesses he claims counsel failed to call at trial, and he presented no proof related to the ski mask. Trial counsel testified that he met with Petitioner on numerous occasions. Trial counsel presented the testimony of alibi witnesses at trial, and he explained that the decision not to pursue DNA testing was a tactical decision made after thoughtful consideration.

Petitioner also asserts, for the first time on appeal, that it was unconstitutional to deny funding for DNA testing in his post-conviction case. It does not appear from the record that this claim was raised in Petitioner's *pro se* post-conviction petition or his amended petition, nor was the issue presented to the post-conviction court. Therefore, this issue cannot be addressed on appeal. *Lane v. State*, 316 S.W.3d 555, 561-62 (Tenn.

8

2010).  Nevertheless, our supreme court has held that the State "is not required to provide expert assistance to indigent non-capital post-conviction petitioners." *Davis v. State*, 912 S.W.2d 689, 696-97 (Tenn. 1995).  Had Petitioner filed a motion seeking approval of funds to hire a DNA expert, the post-conviction court did not have authority to approve such funds.  "In non-capital post-conviction proceedings, funding for investigative, expert, or other similar services shall not be authorized or approved."  Tenn. Sup. Ct. R. 13 §5(a)(2) (citing *Davis*, 912 S.W.2d at 696-97).

For the reasons stated above, we affirm the post-conviction court's denial of post-conviction relief.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

9